**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION**

| | |
|---|---|
| JOHN PATRICK CHILTON, <br> JOHN PATRICK CHILTON as next friend of JPC, <br> a minor, <br>       Plaintiffs, <br><br>     v. <br><br> INDIANA DEPARTMENT OF CHILD SERVICES, <br> MARY BETH BONAVENTURA, individually and <br> in her official capacity as Director of the Indiana <br> Department of Child Services, <br> JOHN KAISER, individually and in his official <br> capacity as Regional Manager of the Clark County <br> Department of Child Services, <br> CINDY MITCHELL, individually and in her official <br> capacity as Family Case Manager for the Clark <br> County Department of Child Services, <br><br>       Defendants. | Case No. 4:15-cv-00081-TWP-TAB |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

  This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants Indiana Department of Child Services ("DCS"), as well DCS Director, Mary Beth Bonaventura ("Bonaventura"), John Kaiser ("Kaiser") the Clark County Regional Manager, and Case Manager, Cindy Mitchell ("Mitchell") (collectively, "Defendants"). ([Filing No. 46](#).) Following a raid of Amanda Chilton ("Amanda") and her husband Harley Jenkins' ("Jenkins") home, DCS workers involuntarily removed Amanda's three minor children, including JPC. Plaintiff John Patrick Chilton ("Chilton") is JPC's biological father. On July 7, 2015, Chilton filed this action against the Defendants in their official and individual capacities, asserting violation of 42 U.S.C § 1983, and state law claims of perjury, official misconduct, malicious prosecution, negligence, abuse of process, and intentional infliction of

emotional distress.  (Filing No. 1; Filing No. 5.)  For the following reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment.

## I. BACKGROUND

The following facts are undisputed.  In mid-2014, a confidential informant ("CI") reported to Officer TeJuan Johnson of the Charleston, Indiana Police Department ("Officer Johnson"), that two individuals, Amanda and Jenkins, were selling narcotics from their home in Clark County, Indiana.  At Officer Johnson's direction, the CI visited Amanda and Jenkins' home and successfully completed three controlled buys of prescription drugs.  During each transaction, JPC and his minor siblings were present in the home.  On Friday, July 19, 2014, Officer Johnson obtained a search warrant for Amanda and Jenkins' home and a warrant for the couple's arrest.  Before executing the warrants, Officer Johnson called the DCS hotline number and explained that there were three minor children in the home and their parents—the only adults present—were about to be arrested.  DCS officials assigned Mitchell as the field case worker to be present during the raid.

Later that day, Amanda and Jenkins were arrested, and Mitchell transported the minor children, including JPC, to the local DCS office.  Amanda is JPC's custodial parent and biological mother.  While at the DCS office, JPC informed Mitchell that Jenkins was not his father, and that Chilton was his biological father.  JPC provided Mitchell with Chilton's telephone number.  During their conversation, JPC also voluntarily offered that Amanda and Jenkins were selling pills and not crack cocaine, and that he was aware of the difference because he watched videos regarding crack cocaine at Chilton's home.  JPC demonstrated to Mitchell as if he was snorting something. After JPC's statement, Mitchell had concerns about the fitness of Chilton to have

immediate custody, so she did not call Chilton. Mitchell, instead, decided that it was in the best interest of JPC to be placed in foster care until a court could determine the best interest of JPC.

On Monday, July 21, 2014, following a hearing in the Clark Circuit Court, JPC was released to Chilton. On July 9, 2015, Chilton filed an Amended Complaint against Defendants, asserting violation of 42 U.S.C § 1983, perjury, official misconduct, malicious prosecution, negligence, abuse of process, and intentional infliction of emotional distress. ([Filing No. 5](#).) Chilton argues that Defendants violated his and JPC's rights when involuntarily removing JPC from his home, placing JPC under DCS care for forty-eight hours, and failing to contact Chilton despite learning that Chilton—rather than Jenkins—is JPC's biological father.

On August 31, 2016, Defendants moved for summary judgment as to all allegations in Chilton's Amended Complaint. ([Filing No. 46](#).) Defendants specifically argue that Chilton's state law claims fail as a matter of law. ([Filing No. 47 at 4](#).) Defendants assert that Chilton's Section 1983 constitutional claim fails because: 1) the Eleventh Amendment entitles Defendants to absolute immunity; 2) Defendants are not "persons" as required under § 1983; 3) Defendants are entitled to qualified immunity; and 4) Bonaventura and Kaiser cannot be held liable under the theory of *respondeat superior*. *Id*.

## II. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v.*

3

*Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III.   DISCUSSION

As an initial matter, in his response, Chilton addresses only Defendants' Eleventh Amendment defense and the qualified immunity claim as it relates to Mitchell. His failure to respond to the remaining arguments amounts to waiver. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver," and "silence

4

leaves us to conclude" a concession.); *Myers v. Thoman*, 2010 U.S. Dist. LEXIS 107502, at *11 (S.D. Ind. Oct. 6, 2010) ("The Seventh Circuit has clearly held that a party who fails to respond to points made . . . concedes those points."). As such, the only issues before the Court are: 1) whether Defendants are entitled to absolute immunity pursuant to the Eleventh Amendment, and 2) whether Mitchell is entitled to qualified immunity. The Court will address each issue in turn.

A. **Eleventh Amendment**

Defendants argue they are entitled to absolute immunity as to Chilton's § 1983 claim because DCS is a state agency and its employees are state officials who, at all times, acted in their official capacity. "The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (citations omitted); *see* IND. CODE § 31-25-1-1 (establishing DCS); *see also Holmes v. Marion Cty. Office of Family & Children*, 349 F.3d 914, 919 (7th Cir. 2003) (holding "county offices of family and children in Indiana now must be classified as part of the state for purposes of the Eleventh Amendment").

In response, Chilton fails to address whether Defendants' are entitled to absolute immunity. Instead, he merely states that his constitutional claim is not barred by the Eleventh Amendment. The Court finds that Chilton's response amounts to a mere conclusion and fails to establish a genuine need for trial. "A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink*, 900 F. Supp. at 1072 (citations omitted). Accordingly, because Chilton has not alleged specific factual allegations to establish a

genuine issue of material fact, the Court **grants** Defendants' absolute immunity claim. The Court, however, notes that Chilton's individual capacity claim against Mitchell for violation of his constitutional right is not barred by the Eleventh Amendment. *See Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1009 (7th Cir. 2000).

**B.** **Qualified Immunity**

With respect to Chilton's individual capacity claim against Mitchell, under § 1983, Defendants next argue that Mitchell is entitled to qualified immunity because she acted reasonably when removing JPC. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Therefore, before liability will attach, "the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1022 (7th Cir. 2000) (citations omitted).

Chilton argues that Mitchell's actions were unreasonable and violated his and JPC's constitutional rights by physically removing JPC from his home, placing JPC under DCS care for forty-eight hours, and by failing to contact Chilton despite learning that Chilton was JPC's biological father. Chilton contends the involuntary removal of JPC by Mitchell amounts to seizure because JPC was not free to leave. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (a person is seized "if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave"). Chilton also relies on *Heck* when arguing that qualified immunity does not apply because Mitchell is an experienced caseworker who has worked in the field since January 3, 2005 and, as such, Mitchell had reason to know that a biological father

must be notified immediately that his child is in DCS custody. *See Doe v. Heck*, 327 F.3d 492, 516 (7th Cir. 2003).

The Court concludes that Mitchell acted reasonably when removing JPC from the home. "In the context of removing a child from his home and family, a seizure is reasonable if it is pursuant to a court order, if it is supported by probable cause, or if it is justified by exigent circumstances, meaning that state officers have reason to believe that life or limb is in immediate jeopardy." *Brokaw*, 235 F.3d at 1010. There is no dispute that Amanda and Jenkins were arrested on drug related crimes at the time of JPC's removal. The parties also agree that when Mitchell removed JPC, she believed that Amanda and Jenkins were JPC's parents. Accordingly, because JPC is a minor and no other adults were present at the home, the Court finds that the involuntary removal of JPC was justified by exigent circumstances. In addition, the Court finds that Mitchell's concerns regarding immediate placement of JPC with his noncustodial parent were reasonable, given JPC's statements and demonstration of snorting up the nose.

Moreover, even if exigent circumstances did not exist, Chilton has presented no evidence that a reasonable caseworker would have known that Mitchell's actions violated Chilton's and JPC's constitutional rights. *See Landstrom v. Illinois Dep't of Children & Family Servs.*, 892 F.2d 670, 675 (7th Cir. 1990) (noting it is plaintiff's burden to defeat qualified immunity by showing that plaintiff's constitutional right was clearly established); *see also Brokaw*, 235 F.3d at 1022 ("A plaintiff need not always identify a closely analogous case; rather, he can establish a clearly established constitutional right by showing that the violation was so obvious that a reasonable person would have known of the unconstitutionality of the conduct at issue").

Accordingly, because a constitutional violation is not "so obvious" based on the facts of this case, the Court **grants** summary judgment on Mitchell's qualified immunity claim. *See Heck*,

327 F.3d at 516 (granting qualified immunity and the court holding, "at the time the defendant caseworkers…seized John Doe Jr., a 'reasonable' [] caseworker would not have understood his actions, [pursuant to a Wisconsin state statute], to be unconstitutional").

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Summary Judgment. ([Filing No. 46](#).)

**SO ORDERED.**

Date: 4/18/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Stanley E. Robison, Jr.
flyfish@stanleyrobison.com

Jonathan Paul Nagy
INDIANA ATTORNEY GENERAL'S OFFICE
jonathan.nagy@atg.in.gov

Sara Teresa Martin
INDIANA ATTORNEY GENERAL'S OFFICE
sara.martin@atg.in.gov